People v Galvez-Marin (2024 NY Slip Op 01196)

People v Galvez-Marin

2024 NY Slip Op 01196

Decided on March 6, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 6, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
CHERYL E. CHAMBERS
LARA J. GENOVESI
LOURDES M. VENTURA, JJ.

2019-00389
 (Ind. No. 2436/16)

[*1]The People of the State of New York, respondent,
v
Yonatan Galvez-Marin, appellant.

Patricia Pazner, New York, NY (Alice R. B. Cullina of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Nancy Fitzpatrick Talcott, and Charles T. Pollak of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Michael Aloise, J.), rendered December 11, 2018, convicting him of murder in the second degree, attempted robbery in the first degree (two counts), and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Gregory L. Lasak, J.), of those branches of the defendant's omnibus motion which were to suppress identification evidence and certain statements he made to law enforcement officials.
ORDERED that the judgment is reversed, on the law, that branch of the defendant's omnibus motion which was to suppress certain statements he made to law enforcement officials is granted, and the matter is remitted to the Supreme Court, Queens County, for a new trial.
The defendant's contention that his conviction was not based upon legally sufficient evidence is largely unpreserved for appellate review (see CPL 470.05[2]; People v Dawson, 178 AD3d 719, 720; People v Williams, 171 AD3d 1223, 1224). In any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt (see People v Contes, 60 NY2d 620). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348-349), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
However, the Supreme Court improperly denied that branch of the defendant's omnibus motion which was to suppress certain statements he made to law enforcement officials. An individual taken into the custody of law enforcement personnel for questioning must be informed of his or her Miranda rights (see US Const Amend V; Miranda v Arizona, 384 US 436, 467-473). The Miranda warnings are an "'absolute prerequisite to interrogation'" (People v Crawford, 163 AD3d 986, 986, quoting Miranda v Arizona, 384 US at 471; see People v Dunbar, 24 NY3d 304, 314). "'At a hearing to suppress statements made to law enforcement officials, the People have the burden of demonstrating, beyond a reasonable doubt, that the defendant's statements were voluntary [*2]and, if applicable, that the defendant knowingly, intelligently, and voluntarily waived his or her Miranda rights prior to making the statements'" (People v Stevens, 203 AD3d 1181, 1182, quoting People v Loucks, 125 AD3d 890, 890 [citations omitted]). "In order to meet that burden, it must be shown, inter alia, that the waiver was made with 'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it'" (People v Dunbar, 104 AD3d 198, 206, affd 24 NY3d 304, quoting Moran v Burbine, 475 US 412, 421).
Under the circumstances of this case, the record does not support the Supreme Court's determination that the defendant understood the import of the Miranda warnings. Specifically, the detective's pre-warning statements that the Miranda warnings did not "mean anything" and were "just part of the process," viewed in conjunction with the defendant's unresolved confusion as to whether he could answer the detectives' questions, does not demonstrate that the defendant had a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it (see People v Dunbar, 104 AD3d at 206; cf. People v Rodriguez-Rivera, 203 AD3d 1624; People v Mateo, 194 AD3d 1342).
The Supreme Court also improperly determined that the defendant was not subjected to custodial interrogation. Under the circumstances of this case, although the defendant voluntarily accompanied the police to the station and was not placed in handcuffs, a reasonable, innocent person would not have believed that he or she was free to leave the police station at the time the defendant made his statements to the police, and the detective's questions during the interview became accusatory when he asked the defendant "why did you do it?" (see People v Reardon, 124 AD3d 681, 683-684). Therefore, the evidence adduced at the suppression hearing established that the defendant's inculpatory statements were the product of custodial interrogation.
Contrary to the People's contention, the period of time between the initial Miranda warning and the second Miranda warning was insufficient to purge the taint from the first interview. Whether there is sufficient attenuation depends on the temporal proximity of the police misconduct and the defendant's statement, whether there were intervening circumstances, and the purpose and flagrancy of the police misconduct (see People v Mateo, 148 AD3d 727). Under these circumstances, the defendant's subsequent confession was part of a continuous chain of events from the first interview (see People v Rodriguez, 132 AD3d 781, 783; People v Gundersen, 255 AD2d 454, 454-455; cf. People v White, 10 NY3d 286, 292; People v Samuels, 11 AD3d 372, 372).
Furthermore, the Supreme Court's failure to suppress the improperly admitted statements was not harmless beyond a reasonable doubt (see People v Harris, 20 NY3d 912, 914; People v Torres, 172 AD3d 758, 761).
The defendant, in effect, concedes that his contention that the Supreme Court erred in denying that branch of his omnibus motion which was to suppress identification evidence is partially unpreserved for appellate review. In any event, the defendant's contention is without merit. "[T]he limits of an appropriate time period between the alleged crime and a showup identification may vary from case to case" (People v Johnson, 81 NY2d 828, 831), and a days-long time lapse does not render the showup automatically invalid (see People v Hernandez, 159 AD3d 580; People v McCrimmon, 131 AD2d 598; see generally People v Aroer, 172 AD3d 736, 737). A showup identification procedure is unduly suggestive when it creates a "substantial likelihood of misidentification" (People v James, 128 AD3d 723, 725 [internal quotation marks omitted]). Here, the hearing record established that the showup identification procedure was reasonable and not unduly suggestive under the circumstances, and, therefore, it did not taint the subsequent photo array and lineup identification procedures (see People v Howard, 22 NY3d 388, 402; People v Ogando, 194 AD3d 963, 964; People v Jhagroo, 186 AD3d 741, 742; People v Perez, 168 AD3d 475; People v Franqueira, 143 AD3d 1164, 1166).
Furthermore, the Supreme Court properly declined to give an intoxication charge to the jury (see Penal Law § 15.25). "An intoxication charge is warranted if, viewing the evidence in the light most favorable to the defendant, 'there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis'" (People v [*3]Sirico, 17 NY3d 744, 745, quoting People v Perry, 61 NY2d 849, 850). Here, viewing the evidence in the light most favorable to the defendant, there was insufficient evidence to support an inference that the defendant was so intoxicated as to affect his ability to form the necessary criminal intent (see People v Gaines, 83 NY2d 925, 927; People v Juarez, 172 AD3d 1231, 1232; People v Albanese, 84 AD3d 1107, 1108). The defendant's unpreserved contention "that the court applied an incorrect legal standard to determine whether an intoxication charge was warranted is without merit" (People v Drach, 210 AD3d 795, 796).
The defendant's remaining contentions are partially unpreserved for appellate review and, in any event, without merit.
BARROS, J.P., CHAMBERS, GENOVESI and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court